UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

BRYAN KEITH CRAWFORD          )
                              )
V.                            )          NO. 2:12-CV-163
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social Security )

## REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders

of the Court and 28 U.S.C. § 636 for a report and recommendation. This is an action for

judicial review of the administrative denial of the plaintiff's applications for disability

insurance benefits and supplemental security income under the Social Security Act.

Plaintiff's applications were denied following an administrative hearing before an

Administrative Law Judge ["ALJ"]. Plaintiff has filed a Motion for Judgment on the

Pleadings [Doc. 12], while the defendant Commissioner has filed a Motion for Summary

Judgment [Doc. 16].

The sole function of this Court in making this review is to determine whether the

findings of the Commissioner are supported by substantial evidence in the record.

*McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988).

"Substantial evidence" is defined as evidence that a reasonable mind might accept as

adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971).

It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the

conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime*

*Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve

conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff was 34 years of age. He alleges he is unable to work due to serious heart problems which required bypass surgery and the installation of a defibrillator device. He has a high school education. His past job as an electrician required heavy exertion. His past jobs as a welder and construction technician were medium jobs. There is no dispute that he cannot return to any past relevant work.

Plaintiff's medical history is accurately summarized in the defendant's brief as follows:

> Prior to his alleged onset date of September 17, 2009, Plaintiff was diagnosed with coronary artery disease, including ischemic cardiomyopathy with impaired ejection fraction and ventricular tachycardia (Tr. 186, 199). In June 2003, Plaintiff had bypass surgery and stent placement after having a heart attack (Tr. 199). In 2005, after experiencing syncope and ventricular tachycardia, Plaintiff received a dual chamber cardioverter defibrillator (Tr. 202-03, 215). Plaintiff continued to work after the surgery and defibrillator placement (Tr. 143). Plaintiff was hospitalized in May 2007 after his defibrillator discharged several times despite having no symptoms of chest pain, shortness of breath, or palpitations (Tr. 173-76). In 2008, Plaintiff was treated at the Heart Center by Harrison Turner, M.D. (Tr. 186-88). Plaintiff reported no syncopia, stroke-like episodes, or problems with his defibrillator, but complained of leg pain and cramping since his bypass surgery (Tr. 187). After a physical examination of Plaintiff, Dr. Turner stated that Plaintiff's coronary artery disease was stable with no symptoms of tachypalpitation (Tr. 188).

In April 2010, Samuel Breeding, M.D., performed a consultative examination. During the exam, Dr. Breeding observed that Plaintiff's gait and station were normal and that he used no assistive devices (Tr. 281-83). Plaintiff's heart was of regular rate and rhythm and without murmurs, clicks, or rubs; peripheral pulses were equal bilaterally; his pulses were full; and there was no ankle edema (Tr. 282). Plaintiff had normal range of motion of all major joints, 5/5 muscle strength in all major muscle groups, and no sensory deficits (Tr. 282). Dr. Breeding's impression was coronary artery disease with history of myocardial infarction with cardiogenic shock in June 2003, ischemic cardiomyopathy, and diabetes (Tr. 282). He found that the claimant was unable to do sustained physical activity (Tr. 282). Dr. Breeding indicated that Plaintiff should not be around strong magnetic fields (Tr. 282). He opined that Plaintiff could lift up to 25 pounds, sit for four to six hours in an eight-hour day, and stand for two to four hours in an eight-hour day (Tr. 282). In May 2010, Louise Patikas, M.D., reviewed the record and opined that Plaintiff could perform light work without concentrated exposure to extreme cold or heat or exposure to magnetic fields (Tr. 285-92).

Since September 2009, Plaintiff was evaluated three times by Harrison Turner, M.D. In July 2010, Plaintiff reported no chest discomfort, orthopnea, dyspnea, edema, palpitations, tachycardia, or syncope (Tr. 316). Plaintiff stated he had been checking his blood sugar levels at home and they were good (Tr. 316). Plaintiff's cardiac examination was normal, including regular rhythm, no murmurs, and no extra heart sounds (Tr. 317). Dr. Turner found that Plaintiff's coronary artery disease was stable (Tr. 317). In November 2010, Plaintiff reported he had shortness of breath when he climbed stairs when he used to work, but none if he walked slowly on level ground (Tr. 312). Otherwise, Plaintiff reported no chest pain, orthopnea, syncope, or palpitations (Tr. 313). He had no claudication, edema, or ulceration of the legs (Tr.312-13). During this time, Plaintiff's defibrillator device functioned well with no discharges and recorded only some non-sustained arrythmias (Tr. 40-41, 208, 312, 318). An electrocardiogram performed in November 2010 indicated low-normal ejection fraction (Tr. 309-10).

[Doc. 17, pgs. 2-4].

At the administrative hearing, the plaintiff complained about the pain in his legs and shortness of breath and trouble sleeping. He stated his leg pain was constant and he attributed it to vein removal to use in the heart bypass surgery. To relieve this, plaintiff testified he had to elevate his legs "probably twice a day" in a normal day for "as long as it takes." He also testified he occasionally lays down during the day because of the leg pain (Tr. 36-39).

The ALJ called Cathy Sanders, a Vocational Expert ["VE"] at the hearing. Ms. Sanders was asked to assume a person of plaintiff's age who was restricted to light work which would allow him to sit or stand at his option and which would not produce magnetic fields because of his pacemaker/defibrillator. When asked if there were jobs such an individual could perform, she mentioned the jobs of office assistant, telephone answering clerk, and counter clerk, with 5,400 such jobs in the region and 638,000 in the national economy. (Tr. 47-48). With the same sit/stand option and need to avoid magnetic fields, at the sedentary level of exertion there were 4,050 regional and 161,000 national jobs which the individual could perform (Tr. 48). If the plaintiff could not sit or stand for a combination of 8 hours at least one day a week, or if they had to elevate their legs as plaintiff described, Ms. Sanders opined there would be no jobs. (Tr. 49).

In his hearing decision, the ALJ found that the plaintiff had a combination of impairments which were collectively severe: coronary artery disease, ischemic cardiomyopathy, and ventricular tachycardia. (Tr. 21). He found that this combination of impairments did not meet one of the "listed impairments" in the Social Security Regulations. He then found that the plaintiff had "the residual functional capacity ["RFC"] to perform light work...which allows for the option to sit or stand as needed for comfort and does not require working around magnetic fields." (Tr. 22).

The ALJ then recognized his obligation to make a finding regarding the plaintiff's credibility with respect to his statements regarding the intensity, persistence, and limiting effects of the plaintiff's symptoms. He recounted the plaintiff's testimony regarding his leg pain, having to elevate his legs, and difficulty sleeping. He found that the plaintiff's

4

"medically determinable impairments could reasonably be expected to cause the alleged symptoms..." but that plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." He then discussed the findings of the plaintiff's treating physician regarding his heart disease both before and after his alleged disability onset date of September 17, 2009. He particularly noted that the plaintiff had been seen on only three occasions since that date, with stable findings "which indicates mild symptoms with only slight limitation of physical activity." The ALJ then detailed the opinions of Dr. Breeding from his consultative exam. (Tr. 23-24).

He then found that the objective medical evidence did not support a finding of disability or the plaintiff's statements at the hearing. The ALJ noted that the plaintiff had received only "minimal conservative treatment" since his disability onset date, and that he was working before that until he was laid off. The ALJ tactfully pointed out that the plaintiff had not stopped working due to his impairments as he asserted at the hearing, but because he had been laid off. He noted "no evidence of a significant deterioration in the claimant's medical condition since the claimant's...layoff." He then stated he gave little weight to Dr. Breeding's assessment, primarily because it was not supported by Dr. Breeding's physical examination of the plaintiff or by the objective medical evidence in the record. The ALJ gave great weight to the findings of the State Agency physician (Tr. 284-291), which found the plaintiff capable of light work without the sit/stand option contained in the ALJ's RFC finding. (Tr. 24-25). Based upon Ms. Sanders' opinion regarding the number of jobs the plaintiff could perform with the found RFC, the ALJ found that he was not disabled. (Tr.

26).

      Plaintiff asserts that the ALJ did not give proper consideration to the plaintiff's subjective complaints, instead, finding plaintiff less than fully credible. Second, he asserts that the question to the VE did not adequately cover the plaintiff's limitations, making no mention of syncope or having to elevate his legs. Finally, the plaintiff argues that the Dictionary of Occupational Titles ["DOT"] does not discuss any jobs with a sit/stand option, while the VE stated, and the ALJ found, that her testimony was consistent with the DOT.

      Regarding the finding that the plaintiff was not completely credible, plaintiff points out that the State Agency reviewing physician, to whom the ALJ ascribed great weight, stated that the plaintiff's "statements about his symptoms and functional limitations are fully credible as the severity alleged is consistent with the objective findings from the evidence in the file." (Tr. 291). However, a reading of the entire report of the State Agency physician indicates that he was clearly of the opinion that the plaintiff could perform light work on a sustained basis even without a sit/stand option. It is a mischaracterization of the report to suggest otherwise. The State Agency physician did not hear the plaintiff's testimony about having to elevate his legs, etc., and it is clear from his assessment that the doctor felt otherwise. The doctor even noted he did not believe the plaintiff's assertions of leg pain were more than "partially credible" because he would have developed collateral circulation this long after the vein harvests for his bypass surgery. (Tr. 289).

      Also, the ALJ stated valid reasons for his credibility determination, including a review of the evidence from his treating physician's reports and plaintiff's activities of daily living. As for Dr. Breeding's opinion, the Court does not see any substantial conflict between his

6

opinions on how many hours the plaintiff could sit, stand or walk, and the performance of light work with a complete sit/stand option found by the ALJ. Dr. Breeding simply said the plaintiff could sit four to six hours and stand two to four hours in an eight hour day. In any event, even if he had to sit for the entire day in a sedentary job, with absolutely no involuntary standing, the VE identified a significant number of those jobs which the plaintiff could perform. The ALJ's finding of less than total credibility should not be disturbed.

The failure of the ALJ to include syncope, dizziness, and elevation of plaintiff's legs in his hypothetical is in this same posture. The medical evidence does not support that any of these conditions substantially affect the plaintiff's ability to function. As for the need to elevate his legs, the ALJ found that this was not a requirement supported by the objective medical evidence.

As to the alleged discrepancy between Ms. Sanders' testimony regarding the sit/stand option in the jobs she identified and the DOT, there simply is no discrepancy. The DOT does not mention a sit/stand option. It is silent on this. This does not mean that the VE cannot, from their personal expertise with the requirements of a particular occupation, opine that a job will accommodate an unrestricted sit/stand option. That is what Vocational Experts are supposed to know. There is no merit in this assignment of error.

The Court finds that there is substantial evidence to support the ALJ's findings of RFC, credibility, and his question to the VE. The VE identified a substantial number of jobs. Accordingly, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 12] be DENIED, and that the defendant Commissioner's Motion for

Summary Judgment [Doc. 16] be GRANTED.[1]

Respectfully submitted,

 s/ Dennis H. Inman
United States Magistrate Judge

---

[1]Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived.  28 U.S.C. 636(b)(1).

8